## IN THE UNITED STATES DISTRICT COURT
### FOR DISTRICT OF MAINE

Robert P. Michaud                  Case No. _____

     Plaintiff,

v.                                COMPLAINT
                                  JURY TRIAL DEMANDED

American Steel and Aluminum LLC

     Defendant

---

Plaintiff Robert P. Michaud ("Plaintiff" or "Michaud"), by and through his counsel, complains against American Steel and Aluminum LLC ("Defendant" or "ASA") as follows:

### PARTIES

1.     Plaintiff is a 51-year-old, male who is a citizen of New Hampshire with his principal place of residence located at 15 Central Street Farmington, NH 03835.

2.     Defendant is an integrated contract manufacturer that has a principal place of business at 115 Wallace Avenue South Portland, ME 04106.

### JURISDICTION AND VENUE

3.     This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 as this matter involves federal questions pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621.  Under Article III of the United States Constitution, this Court has jurisdiction over Plaintiff's New Hampshire common law and statutory claims pursuant to 28 U.S.C. § 1367. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this

District and because a substantial part of the events or omissions giving rise to this claim occurred in this District.

4.     Additionally, and/or alternatively, this Court has diversity jurisdiction under 28 U.S.C. § 1332, as Plaintiff and Defendants are residents of different states and the amount in controversy exceeds $75,000.00.

## EXHAUSTION OF ADMINITRATIVE REMEDIES

5.     Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on or about September 9, 2025, against Defendant.   Plaintiff received a Right to Sue Letter from the EEOC on or about February 1, 2026.  See EXHIBIT A Therefore, Plaintiff has exhausted his administrative remedies regarding Defendant.

## FACTUAL ALLEGATIONS

6.     On or about August 19, 2024, Plaintiff accepted employment with Defendant as a Material Handler. In this position, Plaintiff's duties included loading and unloading steel coils, sheets, bars, and scrap metal, and transporting materials between production areas, storage locations, and shipping.

7.     At the time of hire, Plaintiff informed Defendant that he suffered from an ongoing medical condition resulting in paralysis of his right leg, believed to be caused by brachial plexus injuries (the "Serious Medical Condition").  Plaintiff's Serious Medical Condition substantially limited one or more major life activities.  As a result of this condition, Plaintiff experienced symptoms including anxiety, fatigue, muscle weakness, and swallowing difficulties, which interfered with his daily activities, including sleeping, speaking, walking, thinking, and concentrating.

8.     In recognition of Plaintiff's Serious Medical Condition, Defendant and Plaintiff engaged in the American with Disabilities Act ("ADA") interactive process and concluded on a reasonable accommodation of a thirty-two (32) hour workweek and increased use of Defendant's magnet for moving of steel and other heavy equipment.

9.     Plaintiff excelled in his duties and Defendant promoted him to Foreman in mid-November 2024.  Plaintiff was a valued employee as evidenced by this promotion.,

10.     Shortly after starting the Foreman position, Plaintiff heard several New Hampshire subordinates – who were New Hampshire residents – openly bragging that they were not paying Maine state income taxes despite working for Defendant in the State of Maine. Plaintiff reasonably believed these statements suggested potential violations of Maine tax laws and regulations.  Around January 2025, Plaintiff reported these statements and his concerns to Michael Nolan, Plaintiff's immediate supervisor.  Despite Plaintiff's good-faith report of the conduct, Defendant failed to investigate or take any corrective action.

11.     Unfortunately, the job duties assigned to Plaintiff in the role of Foreman did not accurately reflect the position's actual physical demand which resulted in Plaintiff performing strenuous manual labor substantially similar to – and in some respects exceeding – his prior non-supervisory role.  These expanded and physically intensive duties were inconsistent with the essential supervisory nature of a Foreman position and directly exacerbated Plaintiff's Serious Medical Condition.  To that end, on or about March 23, 2025, Plaintiff voluntarily moved to a Machine Operator position and his hourly wage was decreased accordingly.

12.     On or about March 24, 2025, while training Todd Peterson on how to move a bundled channel steel beam, a bundle of channel steel beams unexpectedly shifted and slipped, striking and crushing Plaintiff's left ring finger.   As a direct and proximate result of this incident,

Plaintiff sustained a serious injury to his left hand that required immediate emergency surgical intervention.

13.     Due to the severity of the injury and resulting medical restrictions, Plaintiff was unable to return to work until early July 2025.  The injury to his left hand is permanent and significantly impairs Plaintiff's ability to concentrate, focus, and fully use his left hand, thereby affecting his ability to perform manual tasks and other major life activities.

14.     Upon returning to work in early July 2025, Plaintiff continued to require reasonable accommodations for his Serious Medical Condition and for limitations arising from his injured left ring finger.  Defendant was aware of Plaintiff's medical conditions and resulting work restrictions.  Nevertheless, Defendant failed to provide any reasonable accommodation and failed to engage in the interactive process in good faith to identify and implement an effective accommodation.

15.     On or about July 22, 2025, Mr. Nolan escorted Plaintiff from the plant floor and informed him that his employment was terminated.  Plaintiff had received no prior notice, warning, or disciplinary action.  When Plaintiff requested an explanation, Mr. Nolan stated something along the lines that that Plaintiff was chosen for termination because he "was the easiest to let go because of all the health issues," thereby expressly linking the termination decision to Plaintiff's medical conditions.

16.     Mr. Peterson – a younger, non-disabled employee – replaced Plaintiff.

## **CLAIM FOR RELIEF**

### **Count I**
Age Discrimination Violation – 29 U.S.C. § 621 et seq.

17.     Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

18.     At all relevant times, Defendant has been, and continues to be, an employer within the meaning of the ADEA, 29 U.S.C. § 630.   At all relevant times, Defendant has been engaged in interstate commerce within the meaning of the ADEA and has employed, and continues to employ, twenty or more employees.

19.     The ADEA makes it unlawful for employers and their agents "to fail or refuse to hire . . . any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).

20.     Plaintiff is over 40 years old.

21.     Plaintiff met and continues to satisfy the applicable job qualifications for Machine Operator.

22.     Plaintiff suffered an adverse employment action in that he was terminated on or about July 22, 2025.

23.     Age was a factor in Defendant's termination of Plaintiff.

24.     Defendant replaced Plaintiff with Mr. Peterson who is substantially younger than Plaintiff.

25.     As a direct and proximate result of the foregoing violations of the ADEA, Plaintiff has sustained economic and non-economic damages, including, but not limited to, denial of the wages and other benefits, lost interest on those wages and other benefits, and loss of the opportunity to advance within Defendant.  Plaintiff is entitled to recover economic and statutory damages and penalties, including back pay, front pay, liquidated damages, and other appropriate relief.

## <u>Count II</u>
American with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq.
Perceived Disability Discrimination

26.     Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

5

27.     Plaintiff was an employee of Defendant within the meaning of 42 U.S.C. § 12111(4).

28.     Plaintiff is a qualified individual within the meaning of 42 U.S.C. § 12111(8) in that prior to and at the time that Defendant fired Plaintiff from his position Plaintiff has the requisite education and experience to perform and can perform the essential functions of his position, and either held or desired to hold a position as Machine Operator.

29.     However, Plaintiff was regarded as disabled by Defendant and Defendant perceived Plaintiff as suffering from serious medical conditions which caused physical impairment that substantially limits Plaintiff's major life activities including sleeping, speaking, walking, thinking and concentrating.

30.     Plaintiff was marginalized and treated inferior to his co-workers based solely on his disability.  As a result of Defendant regarding Plaintiff as disabled, Plaintiff was caused by Defendant to be terminated from his position and subject to emotional distress.

31.     As a direct and proximate result of the foregoing violation of the ADA, Plaintiff has sustained economic and non-economic damages, including, but not limited to, loss of wages, benefits, interest thereupon, loss of the opportunity to advance with Defendant and emotional distress.  Plaintiff is entitled to recover economic and statutory damages and penalties, including back pay, front pay, attorneys' fees, costs of this litigation and other appropriate relief pursuant to 42 U.S.C. § 12205.  Plaintiff is further entitled to any and all relief permitted under 42 U.S.C. § 12117(a), including equitable relief.

## Count III
Americans with Disabilities Act (42 U.S.C. § 12101 et seq.)
Hostile Work Environment – Disability

32.     Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

33.    Plaintiff was a qualified individual with a disability because his serious medical conditions impacted Plaintiff's major life activity by limiting his ability to sleep, speak, walk, think and concentrate.

34.    Plaintiff suffered unwelcome harassment throughout his employment with Defendant.

35.    The harassment was based on Plaintiff's disabilities.

36.    The harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and to create an abusive working environment.

37.    Defendant knew or should have known of the harassment and failed to take prompt remedial action.

38.    As a direct and proximate result of the foregoing violations, Plaintiff has sustained economic and non-economic damages, including, but not limited to, denial of the wages and other benefits, lost interest on those wages and other benefits, and loss of the opportunity to advance within Defendant. Plaintiff is entitled to recover economic and statutory damages and penalties, including back pay, front pay, liquidated damages, and other appropriate relief.

## Count IV
Americans with Disabilities Act (42 U.S.C. § 12101 et seq.)
Retaliation and Discrimination

39.    Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

40.    Plaintiff is a qualified individual within the meaning of 42 U.S.C. § 12111(8) in that he suffers from serious medical conditions which caused physical impairment that substantially limits Plaintiff's major life activities including sleeping, speaking, walking, thinking and concentrating.

41.     Defendant knew about Plaintiff's disability.

42.     Defendant is an "employer" within the meaning of 42 U.S.C. §§ 12111(5) in that it is engaged in an industry affecting commerce and has more than 15 employees for each working day in each of 20 or more calendar weeks in the current and preceding years. Thus, Defendant is also a covered entity within the meaning of 42 U.S.C. §12111(5).

43.     Plaintiff was an employee of Defendant within the meaning of 42 U.S.C. § 12111(4).

44.     Prior to and at the time that Defendant terminated Plaintiff's employment, Plaintiff was qualified for employment as Machine Operator.  On or about July 22, 2025, due to Plaintiff's actual disability, Defendant terminated his employment and/or retaliated against him in violation of 42 U.S.C. § 12112(a). Specifically, PHMS's discriminatory and/or retaliatory actions included, but were not limited to (1) limiting, segregating, or classifying Plaintiff in a way that adversely affected his opportunities or status because of his actual or perceived disability within the meaning of §12112(b)(1); (2) utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability within the meaning of §12112(b)(3)(A); (3) not making reasonable accommodations for the known limitations of Plaintiff – an otherwise qualified individual – despite the fact that doing so would not impose an undue hardship on the operation of Defendant's business within the meaning of § 12112(b)(5)(A); (4) denying employment opportunities to Plaintiff based on Plaintiff's need to make reasonable accommodations for his mental impairments within the meaning of §12112(b)(5)(A); and (5) using qualification standards, employment tests, or other selection criteria that screened out or tended to screen out individuals with disabilities, despite the fact that doing so was not consistent with business necessity, within the meaning of § 12112(b)(6).

45.     Plaintiff has been damaged by Defendant's violation of the ADA inasmuch as Plaintiff has been unable to use his training as Machine Operator, and has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

46.     Plaintiff is entitled to his attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 12205.  Plaintiff is further to any and all relief permitted under the ADA, 42 U.S.C. § 12117(a), including equitable relief.

## Count V
### Americans with Disabilities Act (42 U.S.C. § 12101 et seq.)
### Failure to Provide Reasonable Accommodation

47.     Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

48.     Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act.

49.     At all relevant times, Plaintiff suffered from right leg paralysis and a permanently injured left ring finger, conditions that substantially limited one or more major life activities, including but not limited to walking, standing, lifting, and performing manual tasks.

50.     Plaintiff was qualified to perform the essential functions of his position, with or without reasonable accommodation.

51.     Defendant had actual knowledge of Plaintiff's disabilities and his need for accommodation.

52.     Upon returning to work in early July 2025, Plaintiff's Serious Medical Condition and permanently injured left hand required reasonable accommodations.

53.     Defendant failed to provide reasonable accommodations.

9

54.     Defendant's failure to accommodate Plaintiff's known disabilities denied Plaintiff equal employment opportunities and the ability to perform his job.

55.     As a direct and proximate result of the foregoing violations, Plaintiff has sustained economic and non-economic damages, including, but not limited to, denial of the wages and other benefits, lost interest on those wages and other benefits, and loss of the opportunity to advance within Defendant. Plaintiff is entitled to recover economic and statutory damages and penalties, including back pay, front pay, liquidated damages, and other appropriate relief.

**<u>Count VI</u>**
Americans with Disabilities Act (42 U.S.C. § 12101 et seq.)
Failure to Engage in the Interactive Process

56.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

57.     Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act.

58.     Defendant had actual knowledge of Plaintiff's disabilities and his resulting need for workplace accommodations.

59.     Upon returning to work in early July 2025, Plaintiff requested reasonable accommodations for his Serious Medical Condition and for limitations arising from his injured left ring finger.  Alternatively, Plaintiff's need for accommodation was obvious based on his medical restrictions and physical condition.

60.     Under the ADA, Defendant was required to engage in a timely, good-faith interactive process with Plaintiff to determine an effective reasonable accommodation that would enable Plaintiff to perform the essential functions of his position.

61.     Defendant failed and refused to engage in the interactive process in good faith. Defendant did not meaningfully discuss accommodation options, did not seek clarification regarding Plaintiff's restrictions, and did not explore alternative accommodations.

62.     Defendant's failure to engage in the interactive process resulted in the denial of reasonable accommodations that would have enabled Plaintiff to continue performing his job.

63.     As a direct and proximate result of the foregoing violations, Plaintiff has sustained economic and non-economic damages, including, but not limited to, denial of the wages and other benefits, lost interest on those wages and other benefits, and loss of the opportunity to advance within Defendant. Plaintiff is entitled to recover economic and statutory damages and penalties, including back pay, front pay, liquidated damages, and other appropriate relief.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following:

1) Summons issued for American Steel and Aluminum LLC;

2) Trial by Jury;

3) An award of economic, non-economic, compensatory and punitive damages to Plaintiff in an amount to be determined at trial, together with post-judgement and pre-judgment interest, costs, and attorneys' fees;

4) An order that Defendant reinstate Plaintiff in part-time or full- time employment, at his option, with any necessary reasonable accommodation, for which he is qualified, at the average rate he would have earned had his conditional or contingent offer not been

rescinded or his employment with Defendant had not terminated, with retroactive seniority, payment of back pay with interest, pension, and related benefits;

5) An order enjoining Defendant from failing or refusing to provide sufficient remedial relief to make whole Plaintiff for the losses he has suffered as a result of the adverse treatment presented in this Complaint;

6) An order requiring Defendant to take other appropriate nondiscriminatory measures to overcome the effects of the discrimination; and

7) Such other relief as the Court deems just and proper.

Respectfully submitted this 27th day of February.

<div style="margin-left: 40%;">

*/s/ Danel A. Dufresne*

Danel A. Dufresne
Dufresne Law Firm, PLLC
State Bar No.  MN – 0319065
6417 Penn Avenue South, Ste 7 - 1064
Minneapolis, MN 55423-1196
Telephone: (858) 740-8181
Email: dan@dufresnelawfirm.com
Attorney for Plaintiff

*Sally A. Morris*
Sally A. Morris
Attorney at Law, LLC
State Bar No. ME – 8479
Six City Center - Suite 300
Portland, ME 04101
Telephone: (207) 558-6161
Email: smorris@morrisemploymentlaw.com
Local Counsel

</div>